ORIGINAL

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BHAVIN CHAUHAN,

Plaintiff,

v.

AMAZON.COM SERVICES LLC; AMAZON WEB SERVICES, INC; AMAZON.COM, INC.; AMOGHA SUBRAMANYA D A; VINAY CHOPRA; and ANNELISE NEWMAN,

Defendants.

No. 2:26-cv-01596-TL

VERIFIED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF
(Title VII; ADA; FMLA; WLAD)

_____ FILED _____ ENTERED
_____ LODGED _____ RECEIVED

MAY 11 2026 LS 3:55pm

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY DEPUTY

Plaintiff Bhavin Chauhan, proceeding pro se, alleges as follows:

## I. PARTIES

1. Plaintiff Bhavin Chauhan resides in King County, Washington. Plaintiff has been employed by Amazon as a Level 6 Senior Software Development Engineer and, according to Amazon written communications, remained an employee pending a stated termination date of May 16, 2026.

2. Defendant Amazon.com Services LLC is an employer doing business in King County, Washington and throughout this judicial district. Plaintiff alleges it was the formal employing entity reflected in Plaintiff's employment paperwork and charge materials.

3. Defendant Amazon Web Services, Inc. is an Amazon entity doing business in this judicial district. Plaintiff names AWS because the challenged events involved cross-business-line influence, because Defendant Vinay Chopra later sat within AWS after previously sitting within Retail, and because AWS may possess or control relevant HR, legal, performance, access, payroll, security, or employment records and actors relevant to the adverse actions alleged here.

4. Defendant Amazon.com, Inc. is the parent corporation of Amazon's subsidiaries and does business in this judicial district. Plaintiff alleges Amazon.com, Inc. exercised, had the right to exercise, or materially influenced centralized control over employment policies, HR, leave and accommodation systems, performance management, transfer processes, legal/ethics processes, payroll/compensation systems, and related decision-making relevant here.

5. Defendant Amogha Subramanya D A worked for Amazon as Plaintiff's direct supervisor during relevant events.

6. Defendant Vinay Chopra worked within Amazon as a senior Level 7 manager during relevant events and, according to Plaintiff, later sat in AWS after previously sitting in Retail.

7. Defendant Annelise Newman worked for Amazon as a Senior Human Resources Partner during relevant events.

8. Amazon.com Services LLC, Amazon Web Services, Inc., and Amazon.com, Inc. are referred to collectively as the Amazon Entity Defendants. Plaintiff names those entities cumulatively and/or in the alternative based on formal employment, centralized control, integrated-enterprise or joint-employer allegations, shared HR/legal/performance-management systems, control over records and access, and direct or indirect participation in the practices challenged here.

9. The individual defendants are named for Washington state-law claims to the extent permitted by law, including personal participation, retaliation, interference, and aiding or abetting of the unlawful practices alleged.

## II. JURISDICTION AND VENUE

10. This Court has subject-matter jurisdiction over Plaintiff's federal claims under 28 U.S.C. § 1331 because this action arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2 and 2000e-3, the Americans with Disabilities Act, 42 U.S.C. §§ 12112 and 12203, and the Family and Medical Leave Act, 29 U.S.C. §§ 2615 and 2617.

11. This Court has supplemental jurisdiction over Plaintiff's related Washington Law Against Discrimination claims, RCW 49.60 et seq., under 28 U.S.C. § 1367 because those claims arise from the same nucleus of operative facts as the federal claims.

12. Alternatively and to the extent applicable, this Court has diversity jurisdiction under 28 U.S.C. § 1332(a)(2) because Plaintiff is a citizen or national of India, Defendants are citizens of U.S. states or U.S. business entities, and the amount in controversy exceeds $75,000, including lost compensation, front pay, back pay, emotional distress, punitive damages where permitted, and injunctive relief.

13. Venue is proper in the Western District of Washington under 28 U.S.C. § 1391(b) because Plaintiff resides in this district, the Amazon Entity Defendants do business in this district, Plaintiff's assigned workplace was in King County, and a substantial part of the events giving rise to the claims occurred in this district.

14. This Court has authority to grant temporary, preliminary, and permanent injunctive relief under Fed. R. Civ. P. 65 and its inherent equitable powers.

## III. ADMINISTRATIVE PROCEEDINGS

15. Plaintiff filed EEOC Charge No. 551-2026-01171, dual-filed with the Washington State Human Rights Commission, alleging discrimination based on sex, disability, and retaliation.

16. The finalized charge identifies the relevant period as September 1, 2025 through April 23, 2026 and supplies the factual ceiling for this focused complaint.

17. Plaintiff has requested a Notice of Right to Sue from the EEOC. Plaintiff expects to promptly supplement the record or amend this Complaint upon receipt.

18. Plaintiff's FMLA and WLAD claims do not depend on EEOC exhaustion. To the extent the Court concludes that formal issuance of a Notice of Right to Sue is required before adjudication of any Title VII or ADA count, Plaintiff requests leave to supplement promptly upon receipt rather than dismissal.

19. Plaintiff seeks immediate status-quo relief under all pleaded claims. Even if the Court defers consideration of Title VII or ADA claims pending supplementation of EEOC right-to-sue materials, the same facts independently support emergency relief under FMLA and WLAD.

## IV. FACTUAL ALLEGATIONS

20. Amazon hired Plaintiff on or about August 22, 2016. Plaintiff consistently performed his duties satisfactorily, including receiving multiple Exceeds ratings, awards, and promotion to the next level across various entities within Amazon.

21. In July 2024, Plaintiff was transfer-eligible and selected by another Amazon team after multiple rounds of interviews, but the transfer was blocked.

22. In June 2025, Amazon documentation submitted to the United States government reflected continued investment in Plaintiff's employment through 2028.

23. On August 24, 2025, Plaintiff filed a legal proceeding in India naming Defendant Vinay Chopra, who has roughly 100 reports under him, in connection with coercive pressure tied to Mr. Chopra's sexual relationship with Plaintiff's spouse. Plaintiff alleges Mr. Chopra who had already been running an ongoing campaign of coercion, harassment to further his sexual affair with my spouse, established, furthered and sustained via coercion and intimidation, on both, inside and outside Amazon.

24. Plaintiff alleges there was an expectation of employment conditions in exchange for Plaintiff's silence regarding Chopra's actions or, in the alternative, that Plaintiff resign from Amazon. Plaintiff refused the quid pro quo pressure and filed the legal proceedings.

25. What began with Chopra's coercive interference was then carried out through Amazon's institutional machinery, including management, HR, DLS, and performance-management processes. Plaintiff alleges he was thereafter subjected to a renewed, sustained, and coordinated institutional campaign of harassment, exclusion, hostile treatment, and adverse actions culminating in the April 23, 2026 lockout and Amazon's stated termination date of May 16, 2026.

26. After returning from approved medical leave in or around August 2025, Plaintiff requested accommodations including a flexible schedule, a reduced schedule, and remote work. Plaintiff also alleges he was on intermittent statutory leave during relevant periods.

27. Plaintiff alleges Amazon's Disability and Leave Services team denied remote work based on inputs from Plaintiff's supervisor, Defendant Amogha, after which Plaintiff requested alternate accommodations through DLS around early September 2025.

28. Defendant Amogha had no prior management experience and was only promoted to manager on or about September 15, 2025. Plaintiff alleges Amogha had already initiated adverse performance-management actions before that promotion and was not positioned to evaluate Plaintiff at the L6 level independently. Plaintiff alleges that Amogha's inexperience allowed for the L7 Vinay Chopra to continue his actions while orchestrating and giving plausible deniability to both of them.

29. On September 2, 2025, Amogha placed Plaintiff into Focus with no prior communicated performance issues. Plaintiff alleges he was then given below-level projects, assigned 24/7 on-call duty against requested accommodations, and excluded from L6-level forums, off-sites, and work opportunities.

30. On September 8, 2025, Plaintiff complained to HR regarding failure to accommodate, management actions, and the sensitive situation involving Vinay Chopra. HR paused Focus on September 26, 2025.

31. On October 6, 2025, DLS retroactively approved accommodations effective September 2, 2025, including intermittent leave and a flexible schedule. Plaintiff alleges management brushed those accommodations aside as if they did not exist in practice.

32. Plaintiff alleges that directors Michelle Winters and Angela Jones in the management chain refused to meet with him or meaningfully review his complaints in-spite of Amazon policy requesting the same, and that he was told by the manager that leadership was already in the loop and that he should stop escalating and simply comply – even if that means harassment and termination.

33. On October 29, 2025, the same HR partner who had helped Amogha start the process, Defendant Newman, closed an investigation with no finding. Plaintiff alleges the investigation was used to create or reinforce a pretextual performance narrative rather than to resolve his complaints.

34. In mid-November 2025, Plaintiff requested personnel-file, performance, and HR records. Plaintiff alleges the requested artifacts were not provided.

35. On November 24, 2025, Defendant Amogha sent Plaintiff a flawed and unrealistic action-plan communication containing contradictory goals, date errors, and deadlines that did not account for approved accommodations. Plaintiff alleges he repeatedly requested clear definitions, product-manager resources, engineering resources, and other prerequisites needed for L6-level work, and that those requests were denied. Plaintiff also alleges he was told he would not be able to change teams within Amazon thus trapping him.

36. Plaintiff filed an EEOC charge on or about November 28, 2025, after first filing an inquiry in mid-November. The charge remains active and incorporated into this complaint with reference.

37. On January 12, 2026, Amazon issued Plaintiff a Final Written Warning based on stale allegations from approximately seven months earlier. The warning was labeled affirmative and final, with no further investigation or appeal warranted. Plaintiff immediately rebutted the warning with evidence and factual corrections, but the warning was not withdrawn.

38. On February 18, 2026, Amogha and Newman presented a falsified formal report to Plaintiff with an option to leave Amazon with severance and sign off all waivers including EEOC related claims. Alternatively, Plaintiff could stay with unsafe working conditions and infeasible project without accounting for Plaintiff's accommodations as approved by Amazon's own DLS team. Plaintiff refused to sign any waiver or release and instead offered a complete rebuttal for review to HR.

39. On February 23, 2026, DLS finally confirmed in writing that approved accommodations should not negatively impact performance evaluations and that intermittent leave days are nonworking time. Plaintiff alleges management and HR ignored or failed to apply that guidance.

40. Plaintiff submitted an immediate rebuttal to the Pivot report on or about February 27, 2026. Plaintiff alleges no meaningful update or correction was provided.

41. From February through April 2026, Plaintiff alleges Amazon reduced his compensation by approximately fifty percent without satisfactory explanation, denied project prerequisites and resources, and continued setting work conditions incompatible with accommodations and

intermittent leave. Plaintiff alleges that in spite of accepting that the work was not feasible via email, live meetings, management refused to update the source tickets, hence giving them a chance to evaluate against invalid work scope. Plaintiff's attempt to provide objective and factual data on disparate treatment vs other L6s and teammates and hostile actions were not heard.

42. During March and April 2026, Plaintiff alleges Defendants attempted to flip the narrative on the harassment, exclusion, and adverse treatment onto Plaintiff while benefiting from the prolonged campaign of isolation within Amazon that began after Plaintiff's protected activities. Plaintiff had previously raised concerns on isolation and denial of resources from management and team from August to March 2026.

43. On April 22, 2026, Plaintiff participated in EEOC investigation activity and interview related to the charge. On April 23, 2026, after that EEOC interview, Amazon locked Plaintiff out and removed his system access abruptly, with Amazon stating a tentative termination date of May 16, 2026 and providing no appeal comparable to that afforded to others.

44. Plaintiff currently has no meaningful access to work systems, laptop login, badge access, accounts, HR and payroll systems, DLS materials, or related employment records. Around April 28, 2026, after repeated requests for clarification, Plaintiff was told not to come in to office.

45. Plaintiff is employed in the United States pursuant to H-1B status tied to his employment. Plaintiff alleges Defendants knew or should have known that abrupt lockout and termination pressure would create immigration consequences beyond ordinary job loss, including immediate pressure to preserve status, secure alternate employment, obtain records, and participate in pending administrative and legal proceedings on an accelerated timeline.

46. Plaintiff requested recent paystubs and 2026/2027 PCS or compensation documents. After approximately one week, Amazon responded without providing a practical solution.

47. Plaintiff further alleges that every action to raise concerns of disparate treatment and hostile environment were met with a corresponding fallout and can be easily shown via temporal proximity and Plaintiff reserves the right to supplement as needed. Additionally, Plaintiff alleges he felt that that his backing off on external proceedings (Legal Proceedings in India and EEOC) might have resulted in a different path of action and hence believes the actions were meant to dissuade any reasonable employee from pursuing those paths.

## V. CLAIMS FOR RELIEF

**Count I - Title VII Sex Discrimination / Hostile Work Environment / Quid Pro Quo (Against the Amazon Entity Defendants)**

47. Plaintiff realleges the foregoing paragraphs. Plaintiff alleges that Vinay Chopra's coercion and workplace pressure tied to a sexual relationship involving Plaintiff's spouse, the expectation of employment consequences in exchange for silence or resignation, and the hostile and adverse workplace consequences that followed Plaintiff's refusal constitute sex-based discrimination, hostile work environment, and quid pro quo harassment in violation of Title VII.

**Count II - Title VII Retaliation (Against the Amazon Entity Defendants)**

48. Plaintiff engaged in protected activity by opposing the coercion and harassment, requesting accommodations, using approved leave, complaining internally, filing an EEOC charge, participating in EEOC activity, and refusing to sign a release or resign. Plaintiff alleges the Amazon

Entity Defendants then subjected him to Focus, exclusion, below-level assignments, the Final Written Warning, Pivot, compensation reduction, lockout, and planned termination in retaliation for that protected activity.

**Count III - ADA Disability Discrimination / Failure to Accommodate (Against the Amazon Entity Defendants)**

49. Plaintiff has a disability or perceived disability, requested reasonable accommodations, and was approved for accommodations by DLS. Plaintiff alleges the Amazon Entity Defendants failed to reasonably accommodate Plaintiff, failed to implement approved accommodations in practice, and took adverse actions during and after the accommodation process.

**Count IV - ADA Retaliation / Interference (Against the Amazon Entity Defendants)**

50. Plaintiff requested accommodations, used approved leave, and opposed conduct that interfered with those rights. Plaintiff alleges the Amazon Entity Defendants retaliated against Plaintiff and interfered with the exercise or enjoyment of disability-related rights through performance-management actions, leave-day treatment, compensation reduction, lockout, and termination pressure.

**Count V - FMLA Interference (Against the Amazon Entity Defendants)**

51. Plaintiff was entitled to intermittent FMLA leave and alleges Defendants interfered with, restrained, or denied the exercise of those rights by treating approved leave days as though Plaintiff had full work capacity, proceeding with material employment actions during approved leave, and failing to integrate intermittent-leave protections into performance expectations and decision-making.

**Count VI - FMLA Retaliation (Against the Amazon Entity Defendants)**

52. Plaintiff used or attempted to use intermittent FMLA leave and opposed conduct inconsistent with those rights. Plaintiff alleges the Amazon Entity Defendants retaliated against Plaintiff for exercising or attempting to exercise FMLA rights through discipline, Pivot, compensation reduction, lockout, and termination pressure.

**Count VII - WLAD Sex Discrimination / Hostile Work Environment / Quid Pro Quo**

53. Plaintiff alleges the same sex-based coercion, hostile environment, and quid pro quo pressure violated the Washington Law Against Discrimination, including against the individual defendants to the extent permitted by law.

**Count VIII - WLAD Marital Status Discrimination**

54. Plaintiff alleges Defendants treated him adversely because of his marital status namely the identity of his spouse who was tied in a sexual relationship with Mr Chopra and result of actions to change the status.

**Count IX - WLAD Disability Discrimination / Failure to Accommodate**

55. Plaintiff alleges Defendants failed to reasonably accommodate Plaintiff, failed to implement accommodations in practice, and took adverse action during and after the accommodation process.

**Count X - WLAD Retaliation / Aiding and Abetting**

56. Plaintiff alleges Defendants retaliated against him for protected activity and, to the extent applicable, the individual defendants aided, abetted, encouraged, incited, compelled, or coerced the unlawful practices alleged.

## VI. REQUEST FOR RELIEF

- A temporary restraining order, preliminary injunction, and permanent injunction preserving the status quo of Plaintiff's present employment, including employment status, pay, benefits, approved accommodations, intermittent leave, and access to necessary work, HR, DLS, payroll, and employment systems, pending further order of the Court;
- An order requiring Defendants to restore Plaintiff's badge, laptop, account, email, HR/payroll, DLS, and other necessary system access, or substantially equivalent access sufficient to review and respond to employment matters;
- An order requiring Defendants to produce Plaintiff's recent paystubs and 2026/2027 PCS or compensation documents;
- Back pay, front pay, compensatory damages, emotional-distress damages, punitive damages where permitted, liquidated damages or other monetary relief where permitted, and other damages available by law;
- Costs and attorneys' fees to the extent recoverable by law if counsel appears or if otherwise authorized;
- A declaration that Defendants violated Plaintiff's rights under federal and state law; and
- Such other relief as the Court deems just and proper.

## VII. JURY DEMAND

Plaintiff demands a jury trial on all issues so triable.

## VIII. VERIFICATION

I, Bhavin Chauhan, declare under penalty of perjury under 28 U.S.C. § 1746 that the foregoing is true and correct to the best of my knowledge and belief.

Executed this ____ day of May, 2026, at Issaquah, Washington.

/s/ Bhavin Chauhan
Bhavin Chauhan
400 NW Gilman Blvd, Unit 140
Issaquah, WA 98027
(206) 399-7918
Plaintiff Pro Se